UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| STEVE CROOKS and <br> ERA LEA CROOKS, <br> Individually and on behalf of a putative <br> class of similarly situated persons <br> *Plaintiffs* <br> <br> vs. <br> <br> STATE OF LOUISIANA <br> *Defendant* | Civil Action No. _____ <br> <br> Judge _____ <br> <br> Magistrate _____ |

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, **STEVE and ERA LEA CROOKS,** individually and on behalf of a putative class of similarly situated persons, who for their class action complaint, respectfully show as follows:

### INTRODUCTION

1.

The Louisiana Supreme Court has issued a final judgment holding that Defendant has taken private property – in the form of mineral royalties – from the Plaintiff landowners. To that end, the **STATE OF LOUISIANA ("STATE")** has been ordered to return those royalties to the landowners. Nevertheless, the State has not only refused to return the appropriated royalties, but continues to appropriate minerals from plaintiffs' property without compensation. This constitutes a "taking" without compensation under the Fifth and Fourteenth Amendments of the United States Constitution.

### PARTIES

2.

Plaintiffs, **STEVE and ERA LEA CROOKS**, are competent adult residents and domiciliaries of LaSalle Parish, Louisiana.

{00337633.1 1343/003/ATHOMAS}

3.

Made Defendant herein is the **STATE OF LOUISIANA**, through its Department of Natural Resources.

## JURISDICTION & VENUE

4.

This is a civil rights action arising under 42 U.S.C. § 1983 and § 1988, and the Fifth and Fourteenth Amendments to the Constitution of the United States of America. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332.

5.

Venue is proper pursuant to 28 U.S.C. § 1391 because the taking at issue occurred – and continues to occur – in Rapides and LaSalle Parishes, which are located within the Alexandria Division of the Western District of Louisiana.

## FACTUAL BACKGROUND

6.

In 1962, the United States began constructing various structures in and around the Catahoula Basin pursuant to a congressionally approved navigation project under the River and Harbor Act of 1960 to promote navigation on the Ouachita and Black Rivers.[1] In conjunction with that project, the State of Louisiana signed an "Act of Assurances," which obligated the **STATE** to provide the federal government with all lands and property interests necessary to the project free of charge, and to indemnify the federal government from any damages resulting from the project.[2]
The project was completed in 1973 and, at that time, the United States Fish and Wildlife Service began managing the water levels in and around the Catahoula Basin.[3] As intended, these water management

---

[1] *Crooks v. Dep't of Nat. Res.*, 2019-0160 (La. 1/29/20), 2020 WL 499233, *1 opinion corrected on reh'g (Apr. 9, 2020).
[2] *Id.*
[3] *Id.*

activities increased water levels in the Catahoula Basin and prolonged the natural annual high-water fluctuations.[4] This practice has continued to this day and the **STATE**, through the Department of Wildlife and Fisheries, has granted mineral leases in the area known as Catahoula Lake.[5]

7.

On May 4, 2006, Plaintiffs **STEVE CROOKS and ERA LEA CROOKS** filed a "Class Action Petition to Fix Boundary, For Damages and For Declaration [sic] Judgment."[6] The **CROOKS** alleged that they represent a class of landowners in the Catahoula Basin whose property is affected by the increased water levels from the project.[7] Ultimately, the trial court certified the Plaintiffs as one class, but subdivided that class into two groups – the "Lake Plaintiffs" and the "Swamp Plaintiffs" – depending on the location of the properties affected.[8]

8.

The Lake Plaintiffs were classified as those property owners who sought (1) ownership of the land between the ordinary low and ordinary high water mark of the Little River located within the area known as Catahoula Lake; (2) a declaration that these lands were unlawfully expropriated by the navigation project, which obstructed the natural servitude of drainage; (3) damages for this inverse condemnation; and (4) recovery of the mineral royalty and other payments received by the **STATE** from mineral leases granted over the immovable property at issue.[9] The Swamp Plaintiffs were classified as those persons owning property in the southwestern portion of the Catahoula Basin, designated as "overflow lands."[10] Much of the land bordering and lying outside Catahoula Lake was approved as swampland and transferred to the State by the federal government under the Swampland

---

[4] *Id.*
[5] *Id.*
[6] *Crooks* at *1.
[7] *Id.*
[8] *Id.*
[9] *Id.* at *2.
[10] *Id.*

Acts of 1849 and 1850.[11] It is not disputed that these lands are below an elevation of 36 feet mean sea level, and that their titles originated from patents issued by the **STATE**.[12] Because ownership of these swampland tracts is not disputed, these plaintiffs sought only a declaration of unlawful expropriation and damages for the inverse condemnation.[13]

9.

Following a bench trial, the trial court rendered a judgment in favor of the Plaintiffs, declaring that the body of water in the Catahoula Basin in 1812 was a permanent river that seasonally overflowed and covered its banks; the riparian landowners, i.e., the Lake Plaintiffs, are the owners of these riverbanks; and the **STATE** is liable for the inverse condemnation of these lands because of the significant obstruction of the natural servitude of drainage.[14] The trial court awarded expropriation damages of $28,745,438.40 to the Lake Plaintiffs and $9,550,800.00 to the Swamp Plaintiffs, along with order to return $4,694,309.68 of oil and gas royalties to the Lake Plaintiffs, which was attributable to mineral production from the riparian lands from May 2003 to trial.[15] Importantly, the order concerning royalties was not a money judgment for damages, but a finding that the royalties were owned by the Lake Plaintiffs – not the **STATE** – and must therefore be returned to the proper owner.

10.

On appeal, the Louisiana Third Circuit Court of Appeal affirmed the expropriation and royalty awards, but altered the trial court's allocation of attorney's fees and costs.[16]

---

[11] *Crooks* at *2.
[12] *Id.*
[13] *Id.*
[14] *Id.* at *3.
[15] *Id.*
[16] *Crooks v. Dep't of Nat. Res.*, 2017-750 (La. App. 3 Cir. 12/28/18), 263 So. 3d 540, *writ granted*, 2019-0160 (La. 5/6/19), 269 So. 3d 691, and *aff'd in part, rev'd in part*, 2019-0160 (La. 1/29/20), opinion corrected on reh'g (Apr. 9, 2020).

11.

On May 6, 2019, the Louisiana Supreme Court granted certiorari to review the Third Circuit Court of Appeal's ruling.[17]

12.

In an opinion issued on January 29, 2020, the Louisiana Supreme Court reversed the award of expropriation damages, finding that the claim had prescribed under Louisiana law.[18] However, it affirmed the declaration that Plaintiffs were the owners of the property located between the average low and high-water marks of the original riverbank.[19] It also affirmed the order requiring the State to return the mineral royalties that were rightfully owned by the Plaintiff landowners.[20]

13.

On April 9, 2020, the Louisiana Supreme Court granted rehearing and revised its opinion to address the award of attorney's fees.[21]

14.

On September 7, 2020, the delays for the State to seek review from the United States Supreme Court expired.[22]

15.

There now exists a final judgment ruling that the **STATE OF LOUISIANA** possesses mineral royalties that belong to the Plaintiff landowners. However, the **STATE** has refused to turn over the funds or provide compensation. This gives rise to a takings claim under 42 USCA § 1983.[23]

---

[17] *Crooks v. Dep't of Nat. Res.*, 2019-0160 (La. 5/6/19), 269 So. 3d 691.
[18] *Crooks*, 2020 WL 499233 at *10.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *See* March 19,, 2020 Order of the Supreme Court of the United States & 28 USCA § 2101.
[23] *See Lafaye v. City of New Orleans*, 2021 WL 886118 (E.D. La. 3/9/2021).

## **CLASS ACTION ALLEGATIONS**

16.

The Putative Class Plaintiffs bring this Class action on behalf of themselves and all others similarly situated, for the purpose of asserting the takings and compensatory relief claims alleged in this Complaint on a common basis.

17.

A class action is a superior means, and the only practicable means, by which the putative class plaintiffs and class members can challenge the **STATE**'s unconstitutional taking of their property without just compensation.

18.

This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)-(4), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

19.

This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

20.

The putative class plaintiffs would be adequate representatives of the class because they have no conflict of interests, either among themselves or with the class as a whole.

21.

Putative class plaintiffs, on behalf of themselves and all others similarly situated, are entitled to affirmative relief and attorney's fees for the **STATE**'s ongoing refusal to return the mineral royalties without just compensation, which amounts to a taking in violation of the Fifth Amendment. A remedy for any taking of private property in violation of the Fifth Amendment is provided for in 42 U.S.C. § 1983.

## COUNT 1: FIFTH & FOURTEENTH AMENDMENT VIOLATIONS

22.

Plaintiffs incorporate by reference the allegations contained in paragraphs one through 21 above.

23.

As held in the underling *Crooks* litigation, the **STATE** has taken private property in the form of mineral royalties from the Plaintiff landowners. Despite a court order to this effect, the **STATE** continues to refuse to return the mineral royalties or provide just compensation to the Plaintiff landowners. This constitutes a violation of both the Fifth and Fourteenth Amendments of the United States Constitution.

24.

The State also continues to remove minerals from Plaintiffs' property without just compensation, which constitutes a continuous and ongoing violation.

25.

It is well-settled that 42 USCA § 1983 provides a remedy for the unconstitutional taking of private property without just compensation, which clearly applies here.

26.

Additionally, pursuant to 42 USCA § 1988(b), Plaintiffs are entitled to attorney's fees and costs, which are specifically prayed for herein.

## REQUEST FOR RELIEF

27.

Plaintiffs pray that the class be certified, that the **STATE OF LOUISIANA** be ordered to provide just compensation for the taking of the mineral royalties addressed in the underlying *Crooks* litigation, in addition to the ongoing takings arising from its continued removal of minerals from the

putative class's private property, and that plaintiffs be awarded all costs, fees, interest, and other relief to which they are entitled under the premises.

**WHEREFORE, PLAINTIFFS, STEVE and ERA LEA CROOKS**, individually and on behalf of a putative class of similarly situated persons, pray that the class be certified, that they be awarded all damages, costs, and fees appropriate under the premises, and to all other relief to which they are entitled herein.

          Respectfully submitted,

          **MIXON, CARROLL, FRAZIER & MCILWAIN, LLC**
          P. O. Drawer 1619
          Columbia, LA 71418
          (318) 649-9284 – Phone
          (318) 649-0277 – Fax
          jcarroll@mixoncarroll.com

          */s/ James L. Carroll*
          JAMES L. CARROLL, LSB# 28322